NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
Bryant Y. Yang (Cal. Bar No. 252943)
Assistant United States Attorney
International Narcotics,
 Money Laundering, & Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0166
     Facsimile: (213) 894-0142
     E-mail: bryant.yang@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>WENDELL MARK STREET,<br><br>            Defendant. | No. CR 5:18-00047-GW<br><br>GOVERNMENT'S SENTENCING POSITION<br><br>Hearing Date: August 20, 2020<br>Hearing Time: 8:00 a.m.<br>Location:     Courtroom of the<br>              Hon. George Wu |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Bryant Y. Yang, hereby files its sentencing position with respect to defendant WENDELL MARK STREET ("defendant").

//

//

//

//

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 10, 2020					Respectfully submitted,

								NICOLA T. HANNA
								United States Attorney

								BRANDON D. FOX
								Assistant United States Attorney
								Chief, Criminal Division


								 /S/ Bryant Yang
								BRYANT Y. YANG
								Assistant United States Attorney

								Attorneys for Plaintiff
								UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On August 8, 2019, defendant WENDELL MARK STREET ("defendant") pleaded guilty to counts one and two of the indictment in United States v. Wendell Mark Street, CR No. 5:18-00047, which charge defendant with knowingly and intentionally prescribing and distributing, and willfully causing to be prescribed and distributed, oxycodone in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2(b).

On November 1, 2019, the United States Probation and Pretrial Services Office ("PPSO") filed its Presentence Investigation Report ("PSR") and disclosed its recommendation letter in this matter. The PPSO determined that the total applicable offense level is 31 and that defendant's criminal history is category I, which results in a United States Sentencing Guidelines ("U.S.S.G." or "guidelines") range of 108 to 135 months' imprisonment. The PPSO, however, recommends that the Court sentence defendant to 24 months' imprisonment – which represents a downward variance of 14 levels – followed by 3 years of supervised release.

For the reasons set forth below, the government does not object to the PPSO's calculations of defendant's offense level or criminal history category. The government recommends that the Court grant a five-level downward variance and sentence defendant to 63 months' imprisonment, followed by a three-year term of supervised release.

## II. STATEMENT OF FACTS

### A. Defendant Managed And Supervised A Medical Office, From Where He Prescribed and Distributed Controlled Substances Without Any Legitimate Medical Need

Defendant was a California licensed medical doctor, who unlawfully prescribed and distributed, and caused to be prescribed and distributed, oxycodone and alprazolam from about November 4, 2012, to November 4, 2013. (PSR ¶¶ 10-24.) He prescribed and distributed controlled substances to individuals without a legitimate medical need at an office located in Victorville, CA. (See id. ¶ 95.) He managed and supervised a security guard and at least two office assistants, who helped prescribe and distribute oxycodone and alprazolam for defendant. (See id. ¶¶ 13, 26.) Defendant prescribed and distributed controlled substances to individuals who resided in California, Nevada, and Colorado. (Id. ¶ 26.)

### B. On August 1, 2013, Defendant Sold Prescriptions For Oxycodone And Alprazolam To A Confidential Informant And Undercover Investigators

On August 1, 2013, defendant met with three individuals at his medical office in Victorville. (PSR ¶ 12.) He believed they were drug purchasers, but they were, in fact, a confidential informant ("CI") and two undercover investigators from the Medical Board of California ("UCs"). (Id.) He sold them the following prescriptions: 150 pills containing 30 mg of oxycodone each and 90 pills containing 2mg of alprazolam each to the CI for $300; 150 pills containing 30 mg of oxycodone each and 60 pills containing 2mg of alprazolam each to UC-1 for $300; and 150 pills containing 30 mg of oxycodone each and 60 pills containing 2mg of alprazolam each to UC-2 for $300. (Id. ¶¶ 13-15.) He wrote these prescriptions outside the usual course of professional practice, including by failing to conduct a physical

examination, establish diagnostic testing in the file, provide a treatment plan, and create documentation to establish a medication indication for the prescriptions. (Id. ¶ 16.) Defendant directed a co-conspirator to provide the prescription to the CI. (Id. ¶ 13.)

### C. On August 29, 2013, At The Direction Of Defendant, A Co-Conspirator Sold Prescriptions For Oxycodone To The Undercover Investigators

On August 29, 2013, the UCs returned to defendant's medical office. (PSR ¶ 17.) There, at the direction of defendant, a co-conspirator sold them the following prescriptions: 150 pills containing 30 mg of oxycodone each and 60 pills containing 2mg of alprazolam each to UC-1 for $200; and 150 pills containing 30 mg of oxycodone each and 60 pills containing 2mg of alprazolam each to UC-2 for $200. (Id.) The UCs received their prescriptions without ever meeting defendant, explaining their reasons for wanting the prescriptions, or having to document their requests. (Id.)

### D. The Medical Board Of California Identified Additional Prescriptions That Were Written Without A Medical Purpose

The Medical Board of California identified additional illegal prescriptions for controlled substances, including 189 grams of oxycodone, between September 2, 2011, and April 17, 2014. (PSR ¶ 19.) Defendant sold these prescriptions to five individuals, one of whom was the CI. (Id. ¶¶ 20-24.) Defendant agreed that the Medical Board had established a factual basis for gross negligence related to these prescriptions. (Id. ¶ 19.)

### E. Defendant Pleaded Guilty

On April 13, 2016, Street surrendered his California medical license. (PSR ¶ 28.) On February 9, 2018, a federal grand jury returned a 10-count Indictment against defendant based on his

3

unlawful prescriptions to the CI and UCs.  On August 8, 2019, defendant pleaded guilty to counts one and two, which charge defendant with knowingly and intentionally prescribing and distributing, and willfully causing to be prescribed and distributed, oxycodone in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2(b).

**III. THE PRESENTENCE INVESTIGATION REPORT**

Based on the above facts, the PPSO calculated defendant's offense level for counts one and two to be 31.  Specifically, the PSR applied the following guidelines factors:

Base Offense Level:

| | | |
|---|---|---|
| Converted drug weight between 1,000 kilograms and 3,000 kilograms | 30 | U.S.S.G. §§ 2D1.1(a)(5), (c)(5) |
| Adjustment for Role: Manager or Supervisor | +2 | U.S.S.G. § 3B1.1(c) |
| Adjustment for Role: Abuse of position of trust | +2 | U.S.S.G. § 3B1.3 |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1 |

(PSR ¶¶ 38-50.)  The PPSO calculated defendant's criminal history category as I, based on 1 criminal history point.  (Id. ¶¶ 52-58.)  Applying an offense level of 31 and criminal history category I, the PPSO determined that the applicable guidelines range is 108 to 135 months' imprisonment, three years' supervised release, and a $15,000 to $2,000,000 fine.  (Id. ¶¶ 110, 112, 117.)

The government does not object to the PPSO's calculations of defendant's offense level or criminal history category.  It, however, disagrees with the PPSO's recommendation of 24 months' imprisonment, which would represent a 14-level downward variance.  Instead, the government recommends that defendant receive a five-level downward

4

variance in offense level based on the factors listed in 18 U.S.C. § 3553(a).  With the variance, defendant's offense level is 26 and his guidelines range is 63 to 78 months' custody.

**IV.  THE GOVERNMENT'S SENTENCING POSITION**

The government recommends a sentence of 63 months' imprisonment, to be followed by a three-year term of supervised release.  The government's recommended sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

    **A.  The PPSO Correctly Applied A Two-Level Enhancement For Defendant's Role As A Manger Or Supervisor.**

The PPSO appropriately applied a two-level enhancement under U.S.S.G. § 3B1.1(c) for defendant's role as a manager or supervisor. (PSR ¶ 44.)

"The Guidelines provide for an increase in a defendant's base offense level by two levels if the defendant was an organizer, leader, manager, or supervisor in any criminal activity.  An increase of offense level for an aggravating role is appropriate if there is sufficient evidence to support a finding that the defendant occupied one of the four specified roles."  United States v. Maldonado, 215 F.3d 1046, 1050 (9th Cir. 2000) (quotation marks and citation omitted).  "When a defendant supervises other participants, she or he need exercise authority over only one of the other participants to merit the adjustment.  A single incident of persons acting under a defendant's direction is sufficient evidence to support a two-level role enhancement."  Id. (citations omitted).

Here, defendant managed and supervised employees and others at his Victorville clinic, including a security guard and at least two office assistants, who helped defendant meet patients and prescribe

5

oxycodone and alprazolam. (See PSR ¶¶ 13, 26.) Indeed, defendant admitted that, on August 1, 2013, a co-conspirator – at his direction – collected money from the CI and provided the CI with a prescription in defendant's name. On August 29, 2013, this same co-conspirator, under defendant's supervision, collected money from the UCs and provided prescriptions in defendant's name. See United States v. Atabay, 415 F. App'x 772, 773 (9th Cir. 2011) (affirming enhancement for defendant's role because "she owned and managed the clinic where the [criminal conduct] occurred"); United States v. Egge, 223 F.3d 1128, 1132 (9th Cir.2000) (three-level adjustment was proper where defendant used others to help him sell drugs).

Accordingly, the Court should find that defendant was a manager or supervisor and apply a two-level enhancement under U.S.S.G. § 3B1.1(c).

**B. Defendant Used A Special Skill To Perpetrate The Crimes Or, In The Alternative, Abused A Position Of Trust.**

Similarly, the PPSO correctly concluded that defendant used a special skill in a manner that significantly facilitated the commission of the offense. (PSR ¶ 45.) Alternatively, defendant abused a position of trust. As such, the PPSO appropriately applied a two-level enhancement pursuant to U.S.S.G. § 3B1.3.

U.S.S.G. § 3B1.3 "provides that the district court may enhance the defendant's offense level if he abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." United States v. Petersen, 98 F.3d 502, 506 (9th Cir. 1996) (quotation marks and citation omitted). "The phrase special skill is defined as a skill not possessed by members of the general

6

public and usually requiring substantial education, training or licensing.  Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." Id. (quotation marks omitted).  "The adjustment applies to persons who abuse their positions of trust or their special skills to facilitate significantly the commission or concealment of a crime.  Such persons generally are viewed as more culpable." Id. (quotation marks omitted).

Defendant, as a doctor, possessed education, training, and licensing that members of the public lack.  He used that education, training, and licensing to write prescriptions for controlled substances without any legitimate medical purpose for his patients. Without his license, he could not have written those prescriptions and caused controlled substances to be distributed. See United States v. Volkman, 797 F.3d 377, 399 (6th Cir. 2015) (holding that "[t]he fact that a defendant is a doctor . . . and his victim a patient" is "sufficient for applying the special-skill enhancement, especially in light of the fact that [the defendant] would not have been in a position to abuse his prescription power without his medical license.").

Alternatively, defendant abused a position of trust when he distributed controlled substances to patients without any medical need.  A doctor holds a position of trust over his patients and with the government, which grants him the authority to write prescriptions for controlled substances for the medical needs of his patients. Defendant violated his position of trust by selling prescription, thereby placing the lives of his patients at risk. See United States v. Rutgard, 116 F.3d 1270, 1293 (9th Cir. 1997) ("That he took

7

advantage of vulnerable victims and abused trust was established because, in a professional medical practice, trust between patient and physician is essential and because the government . . . depends upon the honesty of the doctor and is easily taken advantage of if the doctor is not honest.").

Because defendant used a special skill in a manner that significantly facilitated the commission of the offense and because he abused a position of trust, the Court should apply a two-level enhancement under U.S.S.G. § 3B1.3.

### C. The Recommended Sentence Is Warranted

Pursuant to 18 U.S.C. § 3553(a), the Court should pronounce a sentence of 63 months' imprisonment, followed by a three-year term of supervised release. The government's recommended sentence is reasonable based on the nature and circumstances of the offense, the seriousness of defendant's crime, the need to deter similar criminal conduct and to promote respect for the law, and the policy goal of preventing sentencing disparities.

The government's recommended sentence reflects the nature and circumstances of the offenses and the seriousness of defendant's crime. Defendant "breached the trust given to him as a physician by selling prescriptions to the most vulnerable in our population for his own profit." See United States v. Haj-Hamed, 549 F.3d 1020, 1025 (6th Cir. 2008) (quotation marks and citations omitted). His willingness to violate that trust and to risk the lives of so many others over the course of a year weigh in favor of imprisonment. Id.

The government's recommended sentence is also needed to deter similar criminal conduct and to promote respect for the law. "It is undeniably in the public interest for doctors not to recklessly

overprescribe opioids.  Defendant's sentence sends a cautionary message of deterrence to other doctors who may feel tempted by the illicit profit of unnecessary prescriptions." United States v. Rand, No. 3:16-CR-00029, 2020 WL 2733949, at *5-6 (D. Nev. May 26, 2020) (denying motion for compassionate release based on 18 U.S.C. § 3553(a) sentencing factors).

Moreover, 18 U.S.C. § 3553(a)(6) requires the Court to minimize sentencing disparities among similarly-situated defendants.  One way of doing so is to correctly calculate the guidelines range and apply a sentence within that range.  See Gall v. United States, 552 U.S. 38, 54 (2007) ("Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities."); United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' between [the defendant] and other offenders convicted of similar [crimes]."), overruled on other grounds by United States v. Miller, No. 17-50338, 2020 WL 1317275 (9th Cir. Mar. 20, 2020).  Under the guidelines, other defendants in the same circumstances as defendant, with an offense level of 31 and a criminal history category of I, could expect to serve between 108 to 135 months in custody.  Accordingly, the government believes that its recommended sentence will avoid unwarranted sentencing disparities with other similarly-situated defendants.

### D. The Government Recommends a Five-Level Downward Variance

Lastly, the government's recommended sentence of 63 months' custody reflects a five-level downward variance pursuant to 18 U.S.C. § 3553(a). Defendant's history and characteristics support a downward variance. He is 77 years old and has been diagnosed with diabetes, essential hypertension, anemia, chronic kidney disease, and three aneurysms of the thoracic and abdominal aorta. Defendant voluntarily turned in his medical license in April 2016. Furthermore, he served for 17 years in the U.S. Navy Reserve and was honorably discharged.

## V. CONCLUSION

For the foregoing reasons, a sentence of 63 months' custody, followed by a three-year term of supervised release, and a $200 special assessment are sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a). The government respectfully requests that the Court sentence defendant accordingly.

# CERTIFICATE OF SERVICE

I, _____**REGINA AUTREY**_____, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **GOVERNMENT'S SENTENCING POSITION**

☐ Placed in a closed envelope for collection and inter-office delivery addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

☐ By hand delivery addressed as follows:

☐ By facsimile as follows:

☐ By messenger as follows:

☐ By Federal Express as follows:

☒ By e-mail as follows:

**Harland Braun, Esq.**
**harland@braunlaw.com**

**Laurene Harding**
**Laurene_Harding@cacp.uscourts.gov**

This Certificate is executed on **August 10, 2020**, at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

/s/
REGINA AUTREY
Legal Assistant